UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MAHIN GABAYZADEH, as Trustee for and of
The DIANE GABAYZADEH TRUST, The
DEBORAH GABAYZADEH TRUST, and The
JOHN GABAYZADEH U.T.M.A. TRUST,

                Plaintiffs,         REPORT AND
                                             RECOMMENDATION

       -against-                      CV 08-3239 (JFB)(ETB)[1]

RUSSELL C. TAYLOR, STEVEN C.
CATALFAMO, KIMBERLY-CLARK
CORPORATION, CELLU TISSUE HOLDINGS,
INC., and CHARTERHOUSE GROUP
INTERNATIONAL, INC.,

                Defendants.
------------------------------------------------------------------X

TO THE HONORABLE JOSEPH F. BIANCO, UNITED STATES DISTRICT JUDGE:

     Pro se plaintiff, Mahin Gabayzadeh ("plaintiff"), brings this diversity action on behalf of The Diane Gabayzadeh Trust, the Deborah Gabayzadeh Trust, and the John Gabayzadeh U.T.M.A. Trust (the "Trusts") against five defendants, Russell Taylor, Steven Catalfamo, Kimberly-Clark Corporation, Cellu Tissue Holdings, Inc. and Chaterhouse Group International, Inc. (collectively referred to as "defendants"), alleging fraud and conspiracy to commit civil fraud. The defendants move to dismiss plaintiff's Complaint, pursuant to Federal Rule of Civil Procedure 12(b)(6). For the following reasons, I recommend that defendants' motion be granted and that plaintiff's Complaint be dismissed in its entirety.

---

[1] The Court is grateful for the assistance of Sun Min Park, a summer intern and second-year law student at New York Law School, for her assistance in the preparation of this Report and Recommendation.

-1-

FACTS

The court will assume, for purposes of this motion, the facts set forth in the Complaint. In 1995, Kimberly-Clark Corporation ("KC") sought to merge with Scott Paper. (Compl. ¶ 13.) Prior to any approval, the Anti-Trust Division of the United States Justice Department required that KC divest itself of a tissue facility located in Neenah, Wisconsin (the "Neenah facility"). (Id. ¶ 14.) Subsequently, in October 1996, KC sold the Neenah facility to American Tissue, Inc. ("ATI") for $5.75 million, despite initial disagreement by KC due to a previous valuation of the Neenah facility of $77 million by Merrill Lynch. (Id. ¶ 16.) The Trusts that plaintiff purports to represent are shareholders of ATI.[2]

Following ATI's acquisition of the Neenah facility, KC entered into various side agreements with ATI for access to the property and for the purchase of various production materials. (Id. ¶ 17.) On or about March 8, 2001, KC began questioning the financial stability of ATI, evidenced by intraoffice correspondence.[3] (Id. ¶ 18.) On or about May 18, 2001, KC ended its agreement to purchase personal care products and barrier and forming tissue[4] from ATI. (Id. ¶ 19.) Instead, KC purchased the necessary barrier and forming tissue products from Cellu Tissue Holdings, Inc. ("Cellu Tissue"), a company that was acquired by Charterhouse

---

[2] ATI is wholly owned by Middle American Tissue, Inc, which is 96 percent owned by Super American Tissue, LLC. Super American Tissue, LLC is wholly owned by Nourollah Elghanayan, Mehdi Gabayzadeh - plaintiff's husband, who appears to be incarcerated - and the three Trusts herein. (Pl. Br. in Opp. to Def. Mot. to Dismiss 32-33, and Exs. 31-32, annexed thereto.)

[3] Intraoffice correspondence consists of various emails and meeting notes. (Compl. Ex. C.)

[4] "Barrier and forming tissue" is a critical component of feminine care body wadding, infant care barrier sheets, napkins, towels and facial tissue. (Compl. Ex. B.)

Group International, Inc. ("Charterhouse") in September 1998 and whose products were of a lesser quality than that of ATI. (Id. ¶¶ 16, 34.)

In September 2001, ATI filed for bankruptcy. (Id. ¶ 21.) Approximately one month later, defendant Russell Taylor ("Taylor") left his position as President of the Global Products division of KC to serve as the Chief Executive Officer ("CEO") of Cellu Tissue, which, at the time, was on the verge of bankruptcy itself. (Id. ¶ 21.) On or about November 1, 2001, defendant Steven Catalfamo ("Catalfamo") resigned as Vice President of ATI and joined American Paper Corporation, a company affiliated with ATI but which was not included in the ATI bankruptcy. (Id. ¶ 22.) Catalfamo had been primarily responsible for the original purchase of the Neenah facility from KC in 1996. (Id. ¶ 22.)

Plaintiff alleges that after joining American Paper Corporation in November 2001, Catalfamo began collecting "insider information" about the Neenah facility and continued to do so for a period of approximately six months, during which time he assembled a full package concerning equipment, operations, product, employment, financials and other insider information. (Id. ¶¶ 25-26.) Plaintiff further alleges that on or about May 10, 2002, Catalfamo covertly sent the entire package of insider information, along with all of the information he had previously collected as an executive at ATI during the initial purchase of the facility from KC, to Taylor, the President and CEO of Cellu Tissue. (Id. ¶ 27.)

On or about June 7, 2002, Catalfamo left American Paper Corporation, after having allegedly transferred all of the insider and confidential information to Taylor, and joined Cellu Tissue as an advisor consultant, later becoming a full-time salaried officer of Cellu Tissue. (Id. ¶¶ 28, 32.) The plaintiff claims that prior to Taylor's alleged receipt of insider information from

Catalfamo, KC had been corresponding with ATI's court-appointed bankruptcy advisors about purchasing the Neenah facility but those inquiries ceased once the information was exchanged.[5] (Id. ¶ 29.)

On or about August 14, 2002, Cellu Tissue acquired the Neenah facility for $5.85 million through a subsidiary acquisition company known as Cellu Tissue Corporation-Neenah. (Id. ¶ 31.) At the time, ATI's bankruptcy advisors allegedly determined that the Neenah facility had an appraised liquidation value of well over $131 million and was estimated to be producing an annual revenue of over $120 million. (Id. ¶ 31.)

As of August 2008, Cellu Tissue's business has increased exponentially since its acquisition of the Neenah facility and KC remains its single largest customer, representing nearly fifteen percent of its entire sales in 2008. (Id. ¶ 35.)

DISCUSSION

I.  Standard of Review

In order to survive a Rule 12(b)(6) motion to dismiss, a plaintiff is required to plead "only enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 570 (2007) ("Factual allegations must be enough to raise a right to relief above the speculative level."). In other words, a plaintiff must satisfy "a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible." Iqbal v.

---

[5] This correspondence consists of KC discussing the possibility of buying assets and obtaining a confidentiality agreement. (Compl. Ex. L.)

Hasty, 490 F.3d 143, 157-58 (2d Cir. 2007), rev'd and remanded on other grounds, __ U.S. __, 129 S. Ct. 1937 (2009). As a general rule, "[i]n considering a motion to dismiss for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a district court must limit itself to facts stated in the complaint or in documents attached to the complaint as exhibits or incorporated in the complaint by reference." Kramer v. Time Warner Inc., 937 F.2d 767, 773 (2d Cir. 1991). The court must presume all of the factual allegations in the complaint to be true and draw all reasonable inferences in the plaintiff's favor. See EEOC v. Staten Island Sav. Bank, 207 F.3d 144, 148 (2d Cir. 2000) (citing Lee v. Bankers Trust Co., 166 F.3d 540, 543 (2d Cir. 1999)). In addition, because the plaintiff herein is pro se, the court is required to afford her leniency, holding her complaint to "less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (quoting Estelle v. Gamble, 429 U.S. 97 106 (1976)).

II.     A Pro Se Plaintiff May Not Represent Others in a Court of Law

The pro se plaintiff brings the instant action on behalf of the Diane Gabayzadeh Trust, the Deborah Gabayzadeh Trust and the John Gabayzadeh U.T.M.A. Trust, having been granted "all power and authority" to do so as their trustee. (Compl. ¶¶ 6-8.) However, both federal and New York law "prohibits the practice of law in this State on behalf of anyone other than himself or herself by a person who is not an admitted member of the Bar, regardless of the authority purportedly conferred by execution of a power of attorney." In re Welsh, 860 N.Y.S.2d 639, 640 (3d Dep't. 2008) (quoting People ex rel. Field v. Cronshaw, 526 N.Y.S.2d 579, 579 (2d Dep't 1988)); see also Lattanzio v. COMTA, 481 F.3d 137, 139 (2d Cir. 2007) (per curiam) (noting that the statute governing appearances in federal court, 28 U.S.C. § 1654, limits the types of

representation to two - representation by an attorney admitted to the practice of law and a lay person's representation of himself); N.Y. Judiciary Law §§ 478, 484. "[A]ppearance pro se denotes (in law [L]atin) the appearance for one's self; so that a person ordinarily may not appear pro se in the cause of another person or entity." Pridgen v. Andresen, 113 F.3d 391, 393 (2d Cir. 1997). Accordingly, the law clearly prohibits the plaintiff from representing the trusts herein because she is not a licensed attorney authorized to practice law in this court.

Similarly, other courts that have addressed this issue have held that a non-attorney trustee may not represent a trust pro se. See, e.g., Hale Joy Trust v. Comm'r of I.R.S., 57 Fed. Appx. 323, 324 (9th Cir. 2003) (holding that "[a] non-attorney trustee may not represent a trust pro se in an Article III court"); Knoefler v. United Bank of Bismarck, 20 F.3d 347, 348 (8th Cir. 1994) (holding that "a nonlawyer, such as these purported "trustee(s) pro se" has no right to represent another entity, i.e., a trust, in a court of the United States); Bell v. South Bay European Corp., 486 F. Supp. 2d 257, 259 (S.D.N.Y. 2007) (holding that a seller, as the assignee of a purported bank trust, could not proceed pro se and stating that "[a] trust is deemed an artificial entity for the purposes of the rule barring a nonlawyer trustee from representing the interests of the trust."); see also Kahn v. Gee Broadcasting, Inc., No. 07-CV-1370, 2007 U.S. Dist. LEXIS 29390, at *3 (E.D.N.Y. Apr. 19, 2007) ("A pro se plaintiff may not represent the interests of another individual or corporate entity in a civil proceeding."). Thus, the within suit cannot stand as long as the pro se plaintiff seeks to represent the Trusts in a court of law.[6]

---

[6] While some courts have held that the appearance of a corporate entity pro se is "at all times a nullity," Frayler v. N.Y. Stock Exchange, Inc., 118 F. Supp. 2d 448, 450 n.2 (S.D.N.Y. 2000); see also Galt v. Sealand Serv., Inc., No. 87-CV-1038, 1989 U.S. Dist. LEXIS 7018, at *1-2 (N.D.N.Y. June 12, 1989) ("The pro se appearance by an officer of a corporation is a nullity inasmuch as a corporation . . . may sue and be sued only through the agency of an attorney."),

Accordingly, defendants' motion to dismiss should be granted due to the pro se plaintiff's inability to bring the instant action on behalf of the Trusts she purports to represent.

III.   Plaintiff Fails to Allege Sufficient Facts in Support of Her Claims

Assuming arguendo that counsel was obtained to represent the Trusts herein, plaintiff's claims still cannot survive defendants' motion to dismiss, as discussed below.

   A.   Insufficient Allegations of Fraud

To succeed on a claim of fraud, the plaintiff must prove: "(1) a misrepresentation or an omission of material fact which was false and known to be false by the defendant, (2) the misrepresentation was made for the purpose of inducing the plaintiff to rely upon it, (3) justifiable reliance of the plaintiff on the misrepresentation or material omission, and (4) injury." See Green v. Beer, No. 06 Civ. 4156, 2009 WL 911015, at *5 (S.D.N.Y. Mar. 31, 2009) (quoting

---

there is nothing in 28 U.S.C. § 1654 that declares the commencement of an action by a corporate entity acting pro se to be "void ab initio." See In re Interiors of Yesterday, LLC, 284 B.R. 19, 25 (Bankr. D. Conn. 2002) (determining by relying, in part, on 28 U.S.C. § 1654, that voluntary bankruptcy petition by an artificial entity appearing pro se was not "void ab initio"). Although the general rule is "to dismiss any action or motion filed by a corporation purporting to act pro se," Grace v. Bank Leumi Trust Co. of N.Y., 443 F.3d 180, 192 (2d Cir. 2006); Oberstein v. Sunpower Corp., No. 07-CV-1155, 2008 U.S. Dist. LEXIS 16937, at *6 (E.D.N.Y. Mar. 5, 2008); Grace v. Rosenstock, No. 85-CV-2039, 2004 U.S. Dist. LEXIS 29654, at *20 (E.D.N.Y. Oct. 4, 2004), some courts have permitted the corporate entity additional time to obtain counsel in lieu of a dismissal with prejudice. See, e.g., Lattanzio, 481 F.3d at 140 (denying limited liability company's appeal without prejudice and allowing it forty-five days to obtain counsel); Jones v. Niagra Frontier Transp. Auth., 722 F.2d 20, 23 (2d Cir. 1983) (affirming district court's dismissal of pro se corporation's complaint unless corporation obtained counsel within forty-five days); Sharp v. Bivona, 304 F. Supp. 2d 357, 365 (E.D.N.Y. 2004) (affording corporate pro se plaintiff thirty days to obtain counsel and noting that failure to do so would result in dismissal). In the within action, however, permitting plaintiff time to obtain counsel to appear on behalf of the Trusts she purports to represent pro se would be an exercise in futility since the claims she seeks to assert fail as a matter of law, as discussed infra.

Ozelkan v. Tyree Bros. Envtl. Servs., Inc., 815 N.Y.S.2d 265, 267 (2d Dep't. 2006)). In addition, a claim for common law fraud under New York law must satisfy the heightened pleading requirements of the Federal Rules of Civil Procedure. See Edison Fund v. Cogent Inv. Strategies Fund, Ltd., 551 F. Supp. 2d 210, 232 (S.D.N.Y. 2008) ("Common law fraud claims also must satisfy the pleading with particularity requirement of Rule 9(b)."); Marcus v. Frome, 329 F. Supp. 2d 464, 475 (S.D.N.Y. 2004) ("A claim for common law fraud under New York law must satisfy the requirements of Rule 9(b).").

Pursuant to Rule 9(b), allegations of fraud must be pled with "particularity." Fed. R. Civ. P. 9(b). To satisfy the particularity requirement, a complaint must: (1) specify the statements that the plaintiff contends were false or misleading; (2) explain why the statements were fraudulent; (3) state where and when the statements were made; and, (4) identify the speaker(s). See Cosmas v. Hassett, 886 F.2d 8, 11 (2d Cir. 1989) (citation omitted). In addition, where there are multiple defendants charged with fraud, the Second Circuit has held that the complaint "should inform each defendant of the nature of his alleged participation in the fraud." Mosseri v. Lesser, No. 97-CV-6939, 1999 WL 1032346, at *2 (E.D.N.Y. Mar. 3, 1999) (quoting DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987)). "General allegations that the defendants 'conspired' in the scheme do not sufficiently attribute responsibility for fraud to each individual defendant." Trustees of the Plumbers and Pipefitters Nat'l Pension Fund v. De-Con Mech. Contractors, Inc., 896 F. Supp. 342, 347 (S.D.N.Y. 1995) (citing Morin v. Trupin, 711 F. Supp. 97, 111 (S.D.N.Y. 1989)).

Drawing all inferences in favor of the plaintiff, the complaint fails to establish the requisite elements of fraud and meet the federal pleading requirements. The plaintiff simply

alleges that the defendants acquired the Neenah facility during ATI's bankruptcy proceedings "fraudulently" or through "fraudulent means." (Compl. ¶¶ 30, 34.) However, the complaint fails to specify any actual misrepresentations or omissions of material fact. More importantly, there are no allegations of reliance by the plaintiff on any such misrepresentations or material omissions. Demonstrating reliance is essential because a plaintiff must have relied on the fraudulent statement "in ignorance of its falsity" to properly state a fraud claim. Murray v. Xerox Corp., 811 F.2d 118, 121 (2d Cir. 1987).

At most, the complaint merely contains vague accusations of fraud. Specifically, each defendant's alleged participation in the purported fraud is as follows:

- Taylor: Taylor left his senior executive position at KC approximately one month after ATI filed for bankruptcy and joined Cellu as the CEO. He received "insider and confidential information" about the Neenah facility from Catalfamo. (Compl. ¶¶ 21, 27.)

- Catalfamo: Catalfamo participated in KC's initial sale of the Neenah facility to ATI and later left ATI to join Cellu Tissue. He gathered "insider and confidential information" about the facility and sent it to Taylor. (Id. ¶¶ 22, 25-28.)

- KC: After questioning the financial stability of ATI, KC ended its working relationship with ATI and began purchasing the same products from Cellu Tissue. Despite its alleged interest in the purchase of the Neenah facility during ATI's bankruptcy proceedings, KC stopped inquiring about the matter after Taylor received "insider and confidential information" about the Neenah facility from Catalfamo. (Id. ¶¶ 18-20, 28.)

- Cellu Tissue: Cellu Tissue acquired the Neenah facility through ATI's bankruptcy proceedings and hired Taylor and Catalfamo. Prior to and following its acquisition of the

Neenah facility, Cellu Tissue continued to sell products to KC. (Id. ¶¶ 20-21, 31-32.)

- Charterhouse: Charterhouse acquired Cellu Tissue and hired Taylor and Catalfamo as senior employees. (Id. ¶ 34.)

Viewing the allegations set forth above in the light most favorable to plaintiff, as the Court must, they fail to establish fraud with particularity as required under Rule 9(b). What the plaintiff appears to emphasize is the transmittal of "insider and confidential information" regarding the Neenah facility from Catalfamo to Taylor. Yet, the complaint does not offer any details on what this alleged confidential information is. Nor is there any indication of how this purported insider and confidential information affected Cellu Tissue's acquisition of the Neenah facility. All that is offered by the plaintiff is evidence of some communication between Catalfamo and Taylor with no specific information regarding the content and nature of their communication.[7] Since "[c]onclusory allegations of fraudulent conduct are not sufficient to satisfy Rule 9(b)," Musalli Factory for Gold & Jewellry v. JP Morgan Chase Bank, N.A., No. 1:08-CV-01720, 2009 WL 860635, at *5 (S.D.N.Y. Mar. 31, 2009) (citing Trinity Bui v. Indus. Enters. of Am., No. 08 Civ. 0583, 2009 U.S. Dist. LEXIS 6639, at *15 (S.D.N.Y. Jan. 15, 2009)), the complaint herein fails to meet the particularity requirement.

B.  ATI's Bankruptcy Proceedings Bar this Action

Moreover, the plaintiff claims that the Trusts suffered a severe loss of equity because the Neenah facility sale price was approximately $125 million less than the appraised liquidation value at that time. (Id. ¶ 38.) However, the sale of the Neenah facility was

---

[7] Evidence of correspondence between the two include a letter listing the Neenah facility's standard equipment specifications and functions, Catalfamo's expense report, delivery confirmation reports and proof of purchase of portfolio folders. (Compl. Ex. H, I.)

consummated as a part of ATI's bankruptcy proceedings, which were overseen by the bankruptcy court. Indeed, the plaintiff's claims of fraud and conspiracy stem from the bankruptcy court-approved sale of the Neenah facility. Such a claim constitutes an impermissible collateral attack of the bankruptcy court's order. "[S]everal circuit courts have affirmed dismissals of independent actions which aimed effectively to undo a bankruptcy court ordered sale." In re Lawrence, 293 F.3d 615, 621 (2d Cir. 2002) (collecting cases); see also, Hendrick v. Avent, 891 F.2d 583, 587 (5th Cir. 1990) (dismissing fraud claim where "the determination by the bankruptcy court [was] the final authorization of the transfer of title and the subsequent adversary proceeding [was] a direct challenge to that transfer of title" because "the proper medium for a challenge to the original bankruptcy court's order is through a direct challenge of that order"); In re Met-L-Wood Corp., 861 F.2d 1012, 1018 (7th Cir. 1988) (affirming dismissal of a fraud suit as a "thinly disguised collateral attack on the [bankruptcy court's] judgment confirming the sale").

   C. The Statute of Limitations Bar to this Action

In addition, bankruptcy law requires that an appeal be filed within ten days of the order approving the sale of assets. Fed. R. Bankr. P. 8002(a) ("The notice of appeal shall be filed with the clerk within 10 days of the date of the entry of the judgment, order, or decree appealed from."). Federal Rule of Civil Procedure 60(b), which allows the court to set aside a final order in the event of fraud, also has a one-year time limit. Thus, even if the plaintiff attempted to challenge the bankruptcy court's order, such an action would be time-barred because the court order was issued in 2002, six years prior to the filing of the plaintiff's complaint. See, e.g., Chaturvedi v. O'Connell, No. 08-3260-bk, 2009 WL 1883881, at *1 (2d

Cir. Jul. 1, 2009) (affirming dismissal of a pro se plaintiff's appeal of a bankruptcy court order due to his failure to meet the ten-day deadline set forth in Fed. R. Bankr. P. 8002(a)); Siemon v. Emigrant Savs. Bank, 421 F.3d 167, 169 (2d Cir. 2005) (holding that a pro se litigant's failure to comply with the filing deadlines for a notice of appeal set out in Federal Rule of Bankruptcy Procedure 8002 divested the district court of jurisdiction over the litigant's appeal); In re Clinton St. Food Corp., 254 B.R. 523, 532 (Bankr. S.D.N.Y. 2000) ("[The] one year period [under Rule 60(b)] is an absolute, outside limit, and a court lacks the power to grant motions filed beyond that time.").

Based on the foregoing, plaintiff's fraud claim should be dismissed.

D. Conspiracy to Commit Civil Fraud

Under New York law, there is no independent substantive tort of conspiracy. See Yerushalmi v. Monroe, 587 N.Y.S.2d 376, 377 (2d Dep't 1992) (citing Goldstein v. Siegel, 244 N.Y.S.2d 378, 382 (1st Dep't. 1963)); see also Alexander & Alexander, Inc. v. Fritzen, 68 N.Y.2d 968, 969 (1986) ("[A] mere conspiracy to commit a [tort] is never itself a cause of action."). In order to sufficiently allege civil conspiracy, a plaintiff must set forth: "(1) an independent actionable tort, (2) a corrupt agreement between two or more parties, (3) an overt act in furtherance of the agreement, (4) the parties' intentional participation in the furtherance of the agreed to plan, and (5) resulting damage or injury." Green, 2009 WL 911015, at *9 (citing Kashi v. Gratsos, 790 F.2d 1050, 1055 (2d Cir. 1986)). Since the plaintiff's allegations here fall short of raising an inference of actionable fraud, a cause of action claiming conspiracy to commit civil fraud cannot stand. See, e.g., Musalli Factory for Gold & Jewellry, 2009 WL 860635, at *12 (dismissing plaintiff's conspiracy claim where the underlying fraud claim having already

been dismissed, "there [was] no fraudulent hook for Musalli to hang his conspiracy claim on"); Fezzani v. Bear Stearns & Co. Inc., 592 F. Supp. 2d 410, 427 (S.D.N.Y. 2008) (dismissing plaintiff's cause of action for civil conspiracy to commit fraud due to failure to state a claim because Bear Stearns's alleged actions were not unlawful or fraudulent).

Based on the foregoing, plaintiff's conspiracy claim fails as a matter of law and should be dismissed.

IV.  Granting Plaintiff Leave to Amend the Complaint

When a motion to dismiss is granted, the "usual practice" is to grant the plaintiff leave to amend the complaint. Mosseri, 1999 WL 1032346, at *2 (citing Oliver Schools, Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). "In particular, complaints by pro se plaintiffs should not be dismissed without leave to amend 'when a liberal reading of the complaint gives any indication that a valid claim might be stated.'" Id. at *2 (quoting Branum v. Clark, 927 F.2d 698, 704 (2d Cir. 1991)). Nonetheless, an exception to granting such leave exists if the court "can rule out any possibility, however unlikely it might be, that an amended complaint would succeed in stating a claim." Reid v. City of New York, 212 Fed. Appx. 10, 11 (2d Cir. 2006) (quoting Cruz v. Gomez, 202 F.3d 593, 597-98 (2d Cir. 2000)).

Here, the plaintiff faces many legal obstacles to her successful prosecution of this action. First, even if counsel were retained to represent the Trusts, the Trusts, as indirect shareholders of ATI - the now bankrupt corporation - lack standing to challenge the bankruptcy court sale of the Neenah facility. Assuming the defendants' alleged conspiracy led to the fraudulent sale of the Neenah facility, as plaintiff alleges, it would be the bankrupt corporation, ATI, that suffered

-13-

direct injury and harm, not the Trusts or the individual beneficiaries of the Trusts. "[I]t is axiomatic that a shareholder has no individual cause of action to recover damages for a wrong against a corporation, even if that shareholder loses the value of his investment or incurs personal liability in an effort to maintain the solvency of the corporation." Kalin v. Xanboo, Inc., 526 F. Supp. 2d 392, 408 (S.D.N.Y. 2007) (quoting Elenson v. Wax, 626 N.Y.S.2d 531, 532 (2d Dep't 1995)). In addition, due to ATI's bankruptcy filing, the shareholder Trusts may not file a derivative claim because the "filing of [a] bankruptcy petition immediately alter[s] the rights of the Corporation and the manner in which its rights [can] be asserted," transferring the right to file any claim to the bankruptcy trustee. Mitchell Excavators, Inc. v. Mitchell, 734 F.2d 129, 131 (2d Cir. 1984); see also Seinfeld v. Allen, 169 Fed. Appx. 47, 49 (2d. Cir. 2006) (affirming the dismissal of shareholder claims because a bankruptcy filing transfers the right to pursue all claims to the bankruptcy trustee).

Moreover, the crux of plaintiff's complaint is the Trusts' objection to the judicially-approved sale of the Neenah facility during the course of ATI's bankruptcy proceedings. As set forth more fully above, those entities are barred from now challenging that sale, which occurred more than six years prior to the commencement of the within action. Any appeal of that sale is now foreclosed by both Rule 8002(a) of the Federal Rules of Bankruptcy Procedure and Rule 60(b) of the Federal Rules of Civil Procedure.

Based on the foregoing, the Trusts plaintiff seeks to represent lack standing to bring the within action. In addition, any action challenging the sale of the Neenah facility is barred by the applicable limitation rules. Accordingly, permitting plaintiff to amend the complaint to substitute a proper plaintiff or sufficiently plead her fraud claims would be futile and such leave

-14-

should be denied.

## RECOMMENDATION

For the foregoing reasons, I recommend that defendants' motion to dismiss be granted and that plaintiff's complaint be dismissed, with prejudice.

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of the Court with a copy to the undersigned within ten (10) days of the date of this report. Failure to file objections within ten (10) days will preclude further appellate review of the District Court's order. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), and 72(b); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993), cert. denied, 513 U.S. 822 (1994); Frank v. Johnson, 968 F.2d 298 (2d Cir. 1992), cert. denied, 506 U.S. 1038 (1992); Small v. Sec'y of Health and Human Servs., 892 F.2d 15, 16 (2d Cir. 1989) (per curiam).

Defendants' counsel is directed to serve a copy of this Report and Recommendation on plaintiff upon receipt.

**SO ORDERED:**

Dated: Central Islip, New York
August 3, 2009

/s/ E. Thomas Boyle
HON. E. THOMAS BOYLE
United States Magistrate Judge